Wright vs. Georgia Railroad and Banking Company.

Mercy Ann Wright, plaintiff in error, vs. The Georgia Railroad and Banking Company, defendant in error.

[1.] Whether the verdict is contrary to evidence, is not a question for the Supreme Court, unless it has been passed upon by the Court below.
[2.] If the facts in evidence do not warrant the charge requested, the Court should refuse to give it.
[3.] Beyond the scope of his agency, an agent cannot, by his declarations, affect his principal. And as corporate bodies, especially railroad companies, have daily, hundreds of employees, in various service, with divisions of labor and duty, simple justice requires that these companies shall not be liable for damages, upon the loose or casual sayings of every person who may be in their employment.
[4.] Negligence is a question for the jury.
[5.] The law applicable to the carriers of passengers, was very fully and fairly given to the jury in the present case ; and the charge of the Court contains nothing of which the plaintiff can rightfully complain.

Case. In Richmond Superior Court. Tried before Judge Hook. April Term, 1865.

The plaintiff's husband, William M. Wright, while traveling as a passenger from Augusta to Camak, upon an express freight train of the Georgia Rail Road, was killed in consequence of the car in which he was—the rear car of the train, called the conductor's car—running off the track and breaking to pieces. The occurrence took place on the 10th of August, 1863, at a curve, near Bel Air, where the rail was slightly worn, and while the train was running at only ordinary speed. After the accident, the track was measured where the run-off commenced, and was found to be about one-fourth of an inch too wide. Only the one car, however, left the track,—the rest of the train passing over safely.

Two of the passengers testified that they themselves could discover no cause for the accident, but that the breakman said on the evening of the same day, " that he had told them that such an accident would take place some day or other, because the axle was two inches too short." The conductor testified that no such statement was made by him, and that he examined the car before leaving Augusta, and occasionally during stoppages, and found nothing wrong with it,—

Wright vs. Georgia Railroad and Banking Company.

that it had been running for several years. The breakman testified that he also examined the car during stoppages, and found nothing the matter with it, and knew of nothing wrong; that he never said an accident would take place, and that the axle was two inches too short; that if anything had been wrong he never would have left Augusta on it. The superintendent of the road testified that the condition, generally, of the road was bad, owing to the difficulty of getting iron, growing out of the exigencies of the war, such as the blockade by sea, the impressment of ships, steamboats, and railroads by government, the presence of large armies in our midst, and the occupation and use of the iron mills by the government. He stated that the road had, in Atlanta, in 1863, for the purpose of being rolled there for repairing the road, a good deal of iron, and that the rolling mill was seized by the government to make iron for gunboats. Also, that some iron purchased for the Milledgeville Ralilroad, was seized by the government. He stated that every thing that could be done was done by the company to keep the road in the best possible state of repair that surrounding circumstances would admit of; that in 1863, prior to August 10th, about 500,000 tons of iron was obtained, and used wherever thought to be most needed; that the iron on the part of the road where the accident occurred, was the "U" rail, upon which, when worn, a run-off is always more probable than upon the "T" rail, and that, in a curve, with this rail worn, there is great danger of the hindermost car jumping the track.

In his argument to the jury, the counsel for plaintiff made the point, that it was the duty of a railroad company to have their passenger cars inspected, previous to each journey, to ascertain their fitness for travel, and if there was a failure in this case, it was not such diligence as the law requires. As to this point, the presiding Judge certifies that, before he began his charge, he called upon counsel to present their requests in writing, and this was not presented; and that he

does not remember to have charged distinctly, or passed directly upon it.

Besides others which the Court gave, the plaintiff's counsel presented in writing the two following requests to charge:

1. If the jury believe there was a curve in the road where the injury happened, and that the rail was worn at that place, it was the duty of the conductor to slacken his speed; and if he ran his train over that portion of the road on the usual running speed, it was not such extraordinary diligence as the law requires, and the plaintiff must recover.

2. If the jury believe that the axle of the car was two inches too short, and that the attention of the company was called to it, the jury may presume that this was the cause of the injury.

These requests the Court declined to give in charge, but stated to the jury, that if the facts relied upon in the same had been proven, they, as well as all other facts in the case, were to be received and weighed by the jury in determining the question of diligence; that the effect of the testimony was for them to pass upon, and not for the Court to decide.

At the request of defendant's counsel the Court charged:

1. That unless an absence of reasonable care and diligence, under all the circumstances of the case, on the part of the defendant, or agents, or employees of defendant, from which the death of the plaintiff's husband resulted, has been proven, then there can be no recovery against the defendant; that reasonable care and diligence is exercised, if the company has done all that human care and foresight can do.

2. That a railroad company is never liable for the death or injury of a passenger, unless there has been an absence of such reasonable care and diligence as has been above defined.

3. That, applying these principles to this case, if the jury believe the defendant has exercised all reasonable care and diligence, done what human skill and foresight could do, for the purpose of keeping this road in repair, and yet, by the

Wright vs. Georgia Railroad and Banking Company.

interference of the Government or its officers, its monopoly and occupation of iron mills, and its seizure of iron which had been provided by the defendant for repairs, it has been prevented from making the repairs which would have precluded this accident, then is not the defendant liable, though the death of the plaintiff's husband may have resulted from the want of such repairs.

4. That if it has been shown to the satisfaction of the jury, that the company and its officers exercised reasonable care and diligence, did what human skill and foresight could do, in the effort to procure iron for the road, and, notwithstanding this, by reason of circumstances in which the country was placed, at the time of this accident,—the blockade by sea, the presence in its midst of large armies, the engrossment, more or less, of ships and steamboats, and railroads, in transporting for the Government, the occupation and use of the iron mills upon which the defendant was compelled to depend for iron, the seizure of iron belonging to the company, intended for repairs, by officers of the Government,—the company has not been able to place this road in a state of efficient repairs, then, though the death of the plaintiff's husband resulted from the want of such repairs, yet is the defendant not liable in this case.

5. That the diligence which is required of a railroad carrying passengers, is not that extraordinary diligence which applies to common carries of merchandise, and holds them bound for every loss or damage which did not result from the act of God or the State's enemies, but such diligence as is made reasonable by the exercise of due and proper human skill and foresight; and, that if the defendant in this case, has, by its agents, exercised such diligence as this, in the effort to keep its road in repair, it is not liable for this accident.

The Court's general charge to the jury, on the question of diligence, was as follows: " This suit is brought by the plaintiff for the recovery of damages from the defendant for the accidental killing of her husband, by the running

off of the cars in 1863,—she alleging that the accident was occasioned by a want of proper diligence on the part of the defendant. The law presumes the want of due diligence; and it is incumbent on the defendant, therefore, to rebut this presumption by proof. The plaintiff is entitled to recover the damages proven, unless the jury are satisfied, from the evidence, that the defendant used all reasonable diligence to prevent accidents,—by which I mean that diligence which a rational, prudent forecast, and a zealous and energetic watchfulness and care would suggest and demand. Taking the definition of *extraordinary diligence* which we find in the Code, I charge you, that extraordinary diligence is required at the hands of railroads, to-wit,—' That extreme care and caution which very prudent and thoughtful persons use in securing and preserving their own property;' but they are not bound to that extraordinary diligence which common carriers of goods, wares, and merchandise are bound to, who secure against every thing except the act of God and of the enemies of the country. In determining the question of diligence, you may look to the condition of the track and cars, the speed employed at the time and place, and to every other fact or circumstance disclosed by the evidence, shedding any light on the subject."

The jury found for the defendant ; and the foregoing charges and refusals to charge are complained of by the plaintiff, as error.

There was no motion made below for a new trial.

POTTLE, for plaintiff in error.

STARNES, for defendant.

HARRIS, J.

It is impossible to look through the record in this case without indulging our sympathies with the widow, who

brings her suit against the defendant for the pecuniary damages she has sustained by its alleged culpable neglect causing the death of her husband, an industrious, sober mechanic, who could realize, annually, by his skill, twelve to fifteen hundred dollars.

No fault can be imputed to him who lost his life. Was there any such remissness or negligence on the part of the employees of the Georgia Railroad, or the Company itself, as made it amenable by law in damages for the death of William M. Wright? A special jury of Richmond county, after hearing much testimony on both sides, were unable to fix upon any negligence, or carelessness, or want of watchfulness, on the part of the defendant, and, consequently, found a general verdict for the defendant.

[1.] There was no motion by the plaintiff for a new trial. This precludes this Court from an expression of opinion upon the correctness of the verdict, and, under the long and uniform practice which has obtained, prevents the granting of a new trial upon the ground that the verdict is contrary to evidence. There is ample power residing in the Superior Courts to correct their errors, or those of a jury. They should be called upon to make them. It is to be presumed that they will correct them, when called on, and if not called on properly, we are bound to presume none existed. There is, moreover, a courtesy due by this tribunal to our brethren of the bench of the Superior Court, which we will, at all times, sedulously observe by refusing to decide upon what was not before them. By adhering to this practice, we avoid what would be a fruitful fount of irritation; and, to them, what would often be gross injustice.

Referring to the record, the testimony was full, as to the bad condition of the road. It appeared, however, from the statement of the superintendent, that it was beyond the power of will, and money, and skill, to put it in better condition. It was in the midst of the civil war. The ports of the South were under a rigid blockade. Supplies of

iron were not to be had.   These facts were known to every man who entered a car.   He had but to look before and around, to be impressed with the conviction, that his danger had increased, and was daily increasing, and that this state of things was remediless.   The railroad company could not be blamed for a state of things it did not produce, and which it could not alter.   Was responsility for damages to be unaffected by these circumstances?   These matters, very probably, had much weight with the jury; but we are not called on to give any opinion as to their value.

[2.] If a new trial can, in this hard case, be accorded to plaintiff, it can only be for some material error in the rulings or charge of the judge.

Let us consider those complained of.   Our brother Hook is said to have erred in refusing to charge the jury, "That when running the train on a curve where the iron was worn, it was the duty of the conductor to slacken the train;" and, further, "That if the axle of the car was two inches too short, and that the attention of the company was called to it, that the jury might presume therefrom that it was the cause of the injury."

These requests were properly refused, for they were unauthorized by the testimony.   There is nothing to show that the train, on this occasion, when running over the curve where the accident occurred, was moving at any other than its common, or usual, speed over curves.   The request carries with it the idea, that the train ran over curves with the same speed with which it passed over the straightest and smoothest stretches of the road.   The testimony, fairly considered, authorized no such idea, and, therefore, the Court did right, for that reason, in declining to give it.

The second request was still more objectionable.   It was not "*a fact*" in testimony, that the axle of the car which ran off and caused the death of Wright, was *two* inches too short; it was not a fact in evidence, that any one had told the company, or its superintendent, or conductor, or any employee having charge of the train, that it was too

short, or two inches too short.   Had these, as facts, been proven, then would the request assume a different aspect.

Two witnesses swore, that, going up with the train the afternoon of the accident to Mr. Wright, the breakman said to them, that the axle of the car which had run off, was two inches too short, and that he had told them so.   This same breakman, when sworn before the jury, denied that he had ever said so, and assigned a very satisfactory reason why he must have been misapprehended, or misstated,—that, had there been any thing wrong about the car, he would never, himself, have gone on it.

[3.] The sayings of the breakman should not have gone to the jury, until it had been shown that it was within his peculiar province to watch over and superintend the condition of the cars constituting the train, and having such a control as to direct which should go and which not.  Beyond the scope of his agency, the principal cannot be bound by his sayings and acts.   This should be looked to with care. It applies, with full force, in the ordinary transactions of life; and, as corporate bodies, especially railroad companies, have, daily, their hundreds of employees, in various service, with divisions of labor and duty, simple justice requires that these companies shall not be liable for damage, upon the loose or casual sayings of every person who may be in their employment.   If this was not already law, public policy, in fostering combined capital adding so much to the wealth and advancement of a people, demands that the same protection to these artificial persons as is constantly accorded to individuals, should be fairly given.

[4.] But, suppose that the sayings of this breakman had been legally admissible, the form of the request to charge is highly objectionable, as it virtually withdraws the question of negligence or culpability from the jury.   The jury, alone, have the right of the determination of this question. It is a complex and difficult matter, often, to decide; as many considerations enter into it, and rarely any fact, of itself, is sufficient to establish it clearly.   If it had been a

43

fact proved, that the axle was too short, still, beyond that was necessary the testimony of some expert, or persons familiar with the running of cars, to show that that was the cause of the accident: certainly the Judge has no right to determine what constitutes negligence.

We have made these remarks, with the view of calling the attention of the bench and bar to the necessity of keeping the provinces of the Judge and jury as distinct as possible.

Counsel for parties certainly have the right, which we would not abridge, to have a principle of law springing from the testimony in the case, and pertinent to the issue tried, given by the Court; but they have no right to single out and specify a fact or two in testimony, and to ask the Judge to charge the jury that if they are satisfied such and such facts exist, or have been proven to their satisfaction, that, then, they should find so and so. It is difficult, perhaps impossible, to fix any rule' which will cover this matter. A prudent Judge will, at all times, 'guard himself against any encroachment on the right and duty of the jury, and, by a general charge, embrace all the legal instruction to the jury necessary to be applied by them to the testimony. Beyond this, he should be cautious in going. No difficulty can arise by such a course: counsel nor clients are deprived of any legal right. If the verdict is wrong, either by misapplication of law, against evidence, without evidence, against the charge of Court, etc., on a motion for new trial, then, the Judge may speak out; as he is then compelled to consider the whole case, and if there is material error, to point it out and correct it by awarding a new trial.

[5.] In looking through the charges given, we see nothing of which plaintiff can rightfully complain.

In defining the degrees of diligence to which, respectively, " carriers of goods" and " carriers of passengers " are held, it is to be regretted that the same term is used " extraordinary." This requires change, as their liabilities are very different. Whenever this shall have been made, a simplicity

in the important doctrines of bailment will occur, greatly economizing the time of our Courts and labor of counsel.

Upon the whole, we think the law applicable to carriers of passengers, was very fully and fairly given to the jury. Such being our best judgment, and as we cannot, by the rules of law, go into the merits of the case, or consider the great hardship which the plaintiff and her children have to endure, and not within our power to redress, we are constrained to affirm the judgment below.