29949. BLACKSHEAR *v.* LIBERTY MUTUAL INSURANCE COMPANY *et al.*

DECIDED APRIL 29, 1943. ADHERED TO ON REHEARING JULY 27, 31, 1943.

796

*Marvin G. Russell,* for plaintiff. *Neely, Marshall & Greene, T. Elton Drake, William E. Ball,* for defendants.

GARDNER, J. ■ Counsel for A. Farnell Blair and the carrier in their brief make this statement: "During October, A. Farnell Blair was a subcontractor under L. P. Friedstedt Company engaged in doing the brick work on a building which Friedstedt Company had contracted to erect at Conley, Georgia." The attorneys for L. P. Friedstedt Company and its carrier in their brief make the following statement: "L. P. Friedstedt Company, at the time of the alleged injury, was engaged as a subcontractor under A. Farnell Blair for the purpose of erecting certain steel construction on a certain building which A. Farnell Blair, as a general contractor, had contracted to build at Conley, Georgia." It is evident that this is a mistake or typographical error on the part of the attorneys for Blair. The record reveals that A. Farnell Blair was a contractor and L. P. Friedstedt Company was the subcontractor. We are quite clear that there was no intention to draw an issue on this point. Under the evidence the claimant was the employee of the contractor and the right to compensation, if any, was against the contractor, the immediate employer, and not against the subcontractor. Code, § 114-112. This is true notwithstanding the fact that the injury was caused by an employee or agency of the subcontractor. It is undisputed that the injury arose out of and in the course of the employment between the contractor as employer, and the claimant as employee. And it is not contended by anyone that the injury was not caused by an accident within the meaning of the workmen's compensation act. But it is disputed that a compensable hernia resulted from the injury. The provisions of the above mentioned Code section provide for the adjustment of liability as between the contractor and subcontractor, but that is a question with which we have no concern in the case before us. The Code, § 114-112, provides: "Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer." In *Zurich General Accident & Liability Insurance Co.* v. *Lee,* 36 *Ga. App.* 248 (2-*a*) (136 S. E. 173), this court held: "Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer." Also it was held in *Banks* v. *Ellijay Lumber Co.,* 59 *Ga. App.* 270

(2) (200 S. E. 480) : "A claimant, seeking compensation under the act, carries the burden of showing, not only that the accident arose out of and in the course of the employment, but that the person injured, for whose injury compensation is claimed, was at the time a servant of the employer against whom compensation is claimed." There might be a different liability for tortious injury to claimant by a third party not a joint tort-feasor than that which exists between employer and employee under the workmen's compensation act. *Athens Railway & Electric Co.* v. *Kinney,* 160 *Ga.* 1 (127 S. E. 290) ; *Atlantic Ice & Coal Corporation* v. *Wishard,* 30 *Ga. App.* 730 (119 S. E. 420) ; *Minchew* v. *Huston,* 66 *Ga. App.* 856 (19 S. E. 2d, 422).

This brings us to inquire whether the injury resulted in compensable hernia. The claim is grounded on the provisions of the Code, § 114-412, which deals with compensation for hernia resulting from injury by accident arising out of and in the course of the employee's employment. There are five requisites set forth which the claimant must definitely prove to the satisfaction of the Industrial Board before he is entitled to compensation. They are: (1) an injury resulting in hernia; (2) that the hernia appeared suddenly; (3) that it was accompanied by pain; (4) that the hernia immediately followed an accident; (5) that the hernia did not exist prior to the accident for which compensation is claimed.

By reference to the award it will be noted that the judgment of the director very clearly sets forth the reasons for his conclusion. He said: "Deputy director therefore finds as a matter of fact, from the undisputed evidence, and concludes as a matter of law, that the claim of David Blackshear is not compensable because his hernia did not appear suddenly and did not immediately follow the accident." Thus it can be inferred that the director was satisfied, and found as a matter of fact, that the other essentials needful to be proved in a case for a compensable injury resulting in hernia were established by the evidence. In this we agree that the director was correct. We come then to inquire whether he was right in finding as a matter of fact and as a conclusion of law that the hernia "did not appear suddenly" and did not "immediately follow the accident." We have examined all of the cases of the appellate courts of this State, so far as we have been able to find, which deal with this question. We mention and set forth

the questions dealt with in such cases as follows: In *London Guarantee & Accident Co.* v. *Shockley*, 31 *Ga. App.* 762 (122 S. E. 99)·, the court was dealing with whether or not the evidence showed that a hernia existed prior to the accident and held: "Proof merely that . . the claimant showed a possible sign of a partial hernia a·few inches from the place of the complete hernia, but not attended by pain or reduced capacity for work, does not even authorize, much less demand, a finding that the hernia alleged to have resulted from the accident in question really existed." In *Bolton* v. *Columbia Casualty Co.*, 34 *Ga. App.* 658 (130 S. E. 535), the only question decided was that the evidence offered to establish the fact that the injury resulted in a hernia was hearsay and had no probative value; that the hearsay evidence was no part of the res gestæ.

In *Brown* v. *United States Fidelity and Guaranty Co.*, 38 *Ga. App.* 461 (144 S. E. 343), the court sustained the award denying compensation on the ground that the injury occurred on Thursday, and it was not until the Sunday morning following that the claimant felt any pain or noticed any sign of hernia. At the hearing the testimony of the claimant contradicted the contents of his previous written statement as to the accompanying pain, and he contended that he had signed the written statement without reading it, and that it was incorrect. The evidence against him was that the statement had been carefully read to him. The court held that the evidence for the claimant under the requirement of the Code, § 114-412, "third, that it was accompanied by pain," was in conflict, and the Industrial Board was authorized though not demanded to find that this requirement was not established. Such was the sole issue determined in that case. In *Southern Surety Co.* v. *Byck*, 39 *Ga. App.* 699 (4) (148 S. E. 294), the court held: "Under the foregoing rulings, the order of the commission, in so far as·it awarded compensation to the claimant for the period of his disability, was authorized, but in so far as it directed the payment of 'reasonable medical, surgical and hospital expenses incurred in this case,' it was not authorized. Accordingly, the judgment of the court below affirming the award will be affirmed, with direction that the award be amended so as to provide for the payment of the claimant's medical and hospital expenses for the period of thirty days following the accident, not exceeding the sum of

$100." The original record in that case reveals that the claimant suffered an injury resulting in a direct, incomplete, inguinal hernia. The evidence revealed a second hernia in the same place by a "likely new tearing." In *London Guarantee & Accident Co.* v. *Cox*, 41 *Ga. App.* 329 (153 S. E. 227), the only question before the court involved treatment and compensation under an award for a compensable hernia.

In *Sullivan* v. *Social Circle Cotton Mills*, 41 *Ga. App.* 714 (154 S. E. 467), the sole question determined was that the pain and suffering of claimant from a hernia were due to a hernia which had existed before the accident. The court said: "The medical testimony authorized the conclusion that the fall sustained by the claimant merely knocked off his truss, and caused a temporary protrusion of the intestines through the existing hernia, and that there was no enlargement or aggravation of the pre-existing hernia condition." In *Westbrook* v. *Highview Inc.*, 42 *Ga. App.* 834 (157 S. E. 362), the only question determined by the court was that the hernia had not been the result of injury caused by an accident which grew out of and in the course of the employment. The court held: "But [if] in the performance of his duty of sliding the cabinet into place he exerts himself only in the manner ordinarily required and expected of him, and a hernia results, the hernia does not result from an injury by accident. Had the employee, while thus engaged in sliding the cabinet into position, fallen or stumbled, or had the cabinet fallen upon him, or had he sustained any other 'mishap not expected or designed' (see 19 A. L. R. 102, 103), and a hernia resulted therefrom, a different question might have been presented." In *American Mutual Liability Insurance Co.* v. *McCarty*, 45 *Ga. App.* 483 (165 S. E. 291), the only question dealt with was whether the hernia was the result of the injury caused by an accident which grew out of and in the course of the employment of claimant. There was no issue as to the resulting hernia.

We find by reference to *Paschal* v. *Foremost Dairies*, 56 *Ga. App.* 397 (192 S. E. 634), that there is a marked difference between those facts and the facts of the instant case. Without relating the facts in detail, we will set forth a summary of this court as to its findings: "The official further testified that on the following morning the claimant came into his office in an excited manner

and said he was 'going to sue Foremost [the employer] or do something, because 1 ruptured myself here;' that upon being asked when the injury occurred, the claimant answered 'several months ago.' Other employees testified that they had not heard the claimant make any mention of having been injured about the plant until after he was discharged. The department found that because of the conflict as to when the claimant notified the employer of his injury, his failure to report it at the time it was alleged to have been sustained, the lack of corroboration as to wearing a truss, a doubt was created as to the injury having been sustained while at work, and that the claimant had not carried the burden of proving his claim. An adverse finding was accordingly rendered." In *Littlejohn* v. *Piedmont Hotel, 62 Ga. App.* 695 (9 S. E. 2d, 688), the decision turned upon the proposition that "the decedent had a pre-existing hernia condition which became strangulated while he 'was performing his usual duties and without any accident.'"

The latest decision is that of *Royal Indemnity Co.* v. *Beckmann, 66 Ga. App.* 369 (supra). The director in his award quoted from it to the following effect: "The latest decision upon this law by our Court of Appeals is the case of *Royal Indemnity Co.* v. *Beckmann,* decided on December 5th, 1941, in which the court reversed the Industrial Board and Fulton superior court, where compensation had been awarded Beckmann, because the hernia did not appear suddenly, or because the hernia did not immediately follow an accident. The court said: 'On an application of the provisions of the statute (Code, § 114-412) to the evidence in this case, it does not appear that the hernia appeared suddenly, or that the hernia immediately followed an accident. This must be shown before the claimant would be entitled to an award for surgical treatment by radical operation under the Code section just mentioned.'" The attorney for the contractor invokes that portion of the *Beckmann* case quoted by the director as controlling in the instant case.

The facts in the *Beckmann* case are distinguishable from the facts in the instant case. The presiding judge who wrote the opinion made this observation: "The evidence was insufficient to establish *when or how the alleged hernia arose,* and was therefore insufficient to show that the hernia appeared suddenly, or that it immediately followed an accident, assuming that there had been an accident." (Italics ours.) When we consider the

headnote in connection with the entire record and opinion in the *Beckmann* case, we do not think there is any conflict in that decision and what we now decide in the instant case. In the *Beckmann* case there appears no attempt to construe the statute with reference to the phrases "appear suddenly" and "immediately followed." Neither of our appellate courts have construed the terms, and perhaps under the particular facts of each case reported there was no necessity to do so. The legislature did not see fit to define the meaning of the terms as used in the statute. Therefore it is incumbent on the court to do so, since their meaning viewed in their relation to the statute as a whole is not obvious. It will be observed in the instant case that the claimant was bandaged the day of the injury and it was not until the bandages were removed by him that the bulging appeared or became visible. It is inferable, at least, that the bandages delayed the visibility of the bulging. At any rate, the bulging was not discovered until the bandages were removed, and did become visible then and there.

In the dissenting opinion in the instant case the learned Chief Judge agrees that the statute should be construed liberally in favor of the claimant, and he further observes that the award of the Industrial Board did not construe the phrases under consideration to mean instantaneous, but that the true meaning of the award was that the Board simply held as a matter of fact that the hernia appeared a week after the accident occurred. Notwithstanding we find in the award, after conclusion, this statement: "Can a week after the accident be construed as within the terms suddenly and immediately? The dictionary defines sudden as meaning *quick, instantaneous, without notice*. It also defines immediately as meaning *directly, instantly*." Taking the words of the award as above quoted, it seems inescapable that the board construed the words to mean instantaneously.

There was no issue as to the time between the injury and the visibility of the hernia. Even conceding the construction of the award as construed in the dissenting opinion, is it not true that hernias may appear any time within a week after the injury (one to six days inclusive)? And is it impossible that they may appear within a week and yet with all possible certainty be determined as resulting directly from the injury? It is true that the fact finding board must determine as a fact the time between the injury and

the resulting hernia, along with the other facts required under the statute. But as to whether that time in any case must be limited to an hour, or seven days, or some other length of time depends on the construction attached to the phrases under consideration. Such construction is for the court to make and not the administrative board. If liberally construed, according to our way of thinking, there is, or may be, an interim of time, of some length at least, between the injury and the appearance of the hernia, and that is the question before us to determine: What length of time? A few seconds, or minutes, or hours, or days? What length of time intervening between the injury and the bulging "would cause the words to become meaningless?" Viewing the question from the facts of this case, it does not seem to be a sufficient answer to say that seven days as a matter of law, regardless of the facts, is too great a length of time, notwithstanding the part the bandages might have played in retarding the visibility of the bulging. In some cases it is practical to conceive that there might be factors which would delay the visibility of the bulging, although the hernia could be traced directly and beyond doubt to the injury within the requirements of the statute. To leave to the administrative body the responsibility, (or to the appellate courts, for that matter), arbitrarily to fix a definite period of time to be applied to every case would be unreasonable and would lead to inequities. The administrative or fact finding body must have a standard measure which can be used in determining this period of time. It is the duty of the court to construe the statute in accordance with the legislative intent in an effort to evolve a rule of construction designed by the statute which will guide the administrative body in determining the truth of each case. The true question in every case which comes before the Industrial Board is: Did the injury cause the hernia? Or was the hernia the direct result, and the injury the sole proximate cause? Of course the statute specifies five certain requisites which the administrative body must take as a guide in reaching its conclusion. Those are other than the two under consideration, (a) injury resulting in hernia; (b) must be accompanied by pain; (c) that hernia did not exist prior to accident. There is no question under the evidence that these three elements were proved. Then let us inquire into the question as to whether under the evidence and a proper construction of the

statute in view of the legislative intent, the hernia "appeared suddenly" and "immediately followed" the accident.

It follows from the citations above and what we have said regarding them that there is no decision of this court or the Supreme Court construing the statute on the question we have before us. It is well established not only in this but in practically all other jurisdictions that the statutes pertaining to the workmen's compensation act will be liberally construed to effectuate the general purpose of the law. We do not think we should construe any .provision of it so narrowly as to defeat this general purpose. At the same time we realize that it was the legislative intent in the passage of the particular section before us dealing with hernia to establish such safeguards as would prevent an employee from collecting compensation for an injury resulting in hernia which did not arise out of and during the course of his employment, or if a hernia did so appear that the injury was not the direct and proximate cause. But if it can be reasonably and definitely ascertained from the facts that the hernia was the direct result, exclusive of other causes, of the injury accidentally received and growing out of and in the course of his employment, the employee should be compensated therefor. So let us see if the evidence in this case, under the law and within the intent and purview of the statute, demands a finding that the claimant is entitled to compensation. If not, this court is without authority to disturb the award of the Industrial Board.

We first examine the evidence. With this purpose in view we divide the evidence into three divisions: First, what took place on the premises when the claimant was injured; second, what took place after he was carried to the hospital; and third, what took place after he left the hospital.

It is undisputed that a metal bucket of steel bolts fell a distance of about twelve feet and struck the claimant on his back, immediately above his hip, and on the right elbow, while he was stooping forward laying brick, knocking him face downward on the platform on which he was working; that he was unconscious for several minutes; that he was removed by the platform foreman and a fellow worker; that he could not walk; that his right leg seemed to be paralyzed; that when he regained consciousness he was suffering severe pain in his back and in the lower part of his stomach

in the region where the bulging later occurred. The foreman testified that the claimant told of such pain at a time when his statement would be considered a part of the res gestæ. The claimant, being unable to walk, was placed in the foreman's car and carried to the first-aid station where the nurse on duty examined him, stated that nothing could be done, administered a sedative to relieve the pain, and forthwith called an ambulance. The evidence does not reveal what period of time elapsed from the time the injury occurred until the claimant reached the hospital, or how soon after he reached the hospital before the doctor arrived and saw and examined claimant for the first time. The injury occurred about two o'clock. The doctor arrived in the "early afternoon." When the doctor arrived the claimant was in bed. The doctor made an examination and discovered bruises on the back and on the elbow; found no broken bones; bandaged claimant's back and instructed him to remain in bed until Saturday afternoon. At that time the doctor made another call and instructed the claimant that he might go home and also to work, provided he could stand the pain. The claimant left the hospital on Saturday afternoon and went to his home where he remained until Monday. He testified that during all this time he was suffering pain in his back and stomach where the protrusion later appeared. The doctor testified that the claimant made no complaint as to pains in his stomach while claimant was at the hospital. (It will be noted that the doctor did not see the claimant until after he had been carried to the hospital and administered a sedative for the pain and after claimant was lying in bed where it is reasonable to infer that the tension in the region of the hernia was relieved and the pain abated by the sedative. Neither does it appear that the doctor inquired as to any pains in the stomach or that the claimant denied having such pains. Therefore, there is no conflict in the evidence as to pains.)

The claimant returned to his work on the following Monday, with the bandages still on him. According to his testimony he still suffered pains in the bottom and right portions of his stomach. Finally, on Friday, a week following the injury, when the claimant returned home, feeling that a portion of his stomach was falling out, he undressed, removed the bandages and discovered the protrusion. Whereupon he returned to the doctor who pronounced his condition hernia.

The fact is stressed that the doctor testified that when he saw the patient at the hospital no complaint was made as to pains in the lower region of the stomach. It must be remembered that this is in the nature of negative testimony. See Code, § 38-111. The doctor did not testify that the claimant had no such pain. The claimant positively testified that he did. The foreman testified that claimant made such complaint in his presence. Then, too, claimant had been given a sedative and was in bed at the time the doctor arrived and examined him. The law would have a fact-finding body reconcile conflicts, or apparent conflicts, in testimony if it can be done without imputing perjury or an untrue statement to any witness. When we apply this rule it is easily apparent that the requirement that pain must accompany the hernia is well established, and that there is no conflict of the testimony on this point. Hence it is that the evidence demanded a finding that the hernia was accompanied by pain and that the hernia did not exist before the accident for which compensation is claimed.

We come next to consider the further requirements of the Code, § 114-412, specified as second and fourth. If the evidence demands an affirmative finding as to the second and fourth requirements, it necessarily follows under the facts of this case that the first requirement that the hernia was one resulting from an accidental injury was established.

We come next to inquire, did the hernia appear suddenly? "The word 'appear' or 'appearing' is one frequently used in judicial proceedings as meaning 'clear to the comprehension' when applied to matters of opinion or reasoning, and 'satisfactorily or legally known, or made known,' when used in reference to facts of evidence. Gorham v. Luckett, 45 Ky. (6 B. Mon.) 146, 165." 3 Words & Phrases, 716. "Facts 'appear' when the evidence from which facts may be found is introduced, and presumptions disappear when facts appear. Christiansen v. Hilber, 276 N. W. 495, 497, 282 Mich. 403." Id. 717.

"Happening suddenly does not mean happening instantaneously. Word 'sudden' means happening without previous notice or with very brief notice; coming unexpectedly; rapid and unforeseen; hastily prepared, employed, made, or done; hasty by nature; violent; rash; precipitate; come upon or met with unexpectedly; unexpected; unusual; abrupt; unlooked for. 'Suddenly' as used in

·compensation act construing accident to mean unexpected event happening suddenly and violently, means happening without previous notice or very brief notice. Mo. St. Ann. §§ 3301, 3305(b), pp. 8232, 8238. Lovell v. Williams, Mo., 50 S. W. 2d, 710, 713." 40 Words & Phrases, 589. "The words 'suddenly' and 'immediately' in provision of workmen's compensation act that in all claims for compensation for hernia it must be definitely proven that hernia appeared suddenly and immediately followed accident should not be construed as equivalent of word 'instantaneous.' Act July 17, 1935, § 2(r), 39 St. at Large, p. 1234. Layton v. Hammond-Brown-Jennings Co., 3 S. E. 2d, 492, 494, 190 S. C. 425. The words 'suddenly' and 'immediately,' in provision of workmen's compensation act requiring that for hernia to be compensable it must have appeared 'suddenly,' and it must have 'immediately' followed accident, are elastic terms, and should not be construed as equivalent of word 'instantaneous.' Code Supp. 1936, § 7035-2(r). Rudd v. Fairforest Finishing Co., 200 S. E. 727, 730, 189 S. C. 188." 40 Words & Phrases Supp. 87. As to the other term "Follow immediately," we do not feel it necessary to comment upon the word "follow." The word itself implies "come after." " 'Immediately' has two meanings, one indicating the relation of cause and effect, as direct and proximate, and the other the absence of time between two events. Preferred Masonic Mutual Accident Ass'n of America v. Jones, 60 Ill. App. 106." 20 Words & Phrases, 105. "Where protrusion was noticed five or six hours after accident, hernia held to have descended immediately, within compensation act, requiring proof of descent 'immediately following cause' before employee can recover compensation. 'Immediately following the cause,' within N. J. S. A. 34:15-12, subd. x, requiring proof that hernia descended immediately following cause before employee can recover compensation, means soon enough and in such manner as to make it appear clear that the descent was the effect of the strain and pain complained of which forced cessation of work. Frank A. McBride Co. v. Kuehn, 168 A. 64, 65, 11 N. J. Misc. 764." Id. 134. See also Rinehart v. F. M. Stamper Co., 22 Mo. App. 653 (55 S. W. 2d, 729). In Hay v. Swiss Oil Co., 249 Ky. 165 (60 S. W. 2d, 385, see 71 C. J. 633, note 19), the court held that a hernia appeared immediately and suddenly following injury, within the statute authorizing compensation therefor, al-

though a knot did not appear for a month. In 71 C. J. 622, note 18, we find cited Maryland Casualty Co. v. Robinson, 149 Va. 307, (141 S. E. 225), as follows: "External knot need not be visible immediately to satisfy compensation statute requiring hernia to appear 'suddenly.'" In note 19, we find: "Hernia was held to have 'immediately followed accident' within the compensation act, although visible knot did not appear for over two months."

In one of the more recent cases, dealing with a statute containing the identical words "appeared suddenly" and "immediately following," is a well-considered opinion from the Supreme Court of South Carolina, Layton v. Hammond-Brown-Jennings, 190 S. C. 425 (3) (3 S. E. 2d, 492): "Workmen's compensation laws should be liberally construed in furtherance of their benefit purpose and, if possible, so as to avoid incongruous or harsh results. Act July 17, 1935, 39 St. at Large, p. 1231." And (4): "The workmen's compensation act restricts compensation for hernia to cases where there is relative and reasonably close coincidence between accidental injury and hernia, and it is clear that no other agency intervened as to time, place, or action to cause injury. Act July 17, 1935, § 2(r), 39 St. at Large, p. 1234." A portion of this same case has been quoted in the opinion in the instant case. In our view the rule laid down in headnote 4 is the correct one under the wording of our statute and the intent of the legislature. If this rule be followed, no meritorious claim shall go uncompensated and no unjust one will receive compensation, thus doing justice to both the employer and the employee and yet upholding the purview and intent of the statute. In this connection it might be informative to quote the facts on which the South Carolina Supreme Court based its decision: "Respondent was engaged in moving some laundry heaters. These heaters weighed approximately sixty pounds and were stacked four high. When respondent picked up one of these heaters, and as he 'came around with it,' 'something caught me.' 'It felt like something pulled loose in my stomach, the right side.' Respondent further testified that his injury was accompanied by pain. He undertook to move a couple more stoves, but the pain became so severe, he quit and reported the incident and his condition or injury to Mr. Lambert Hammond, the shipping clerk of the appellant-employer. Mr. Hammond sent respondent to a Dr. Temples, who examined him, but

did not determine what was wrong. He continued to go to Dr. Temples, and on Wednesday night (the injury occurred on Monday before) respondent went to Dr. W. S. Zimmerman, and as a result of the examination by Dr. Zimmerman, was operated upon the following Saturday—an exploratory operation—in which his appendix was removed, and as the appendix 'was more or less innocent looking,' and apparently was not a sufficient cause for his symptoms, the surgeons 'felt down lower and found a group of gut, intestines, which had entered in the hernial ring, but saw no external evidence of it at all.' The attending surgeons agreed that respondent would probably not get relief unless they repaired the hernia, so they extended the incision, repaired the ring, closed it up, and respondent made an uneventful recovery. Respondent never had any trouble with his right side before the date of this injury; and this injury came on suddenly while he was lifting the stove. The further medical testimony was that the protrusion, which is the hernia, was of recent date. There was testimony from which the Industrial Commission could easily conclude that respondent's hernia appeared suddenly; and the circuit judge very properly refused to hold otherwise."

The five requirements of the Code section are designed as the means to establish clearly and definitely by proof that there is a direct continuity of causal connection between an accidental injury and the hernia. No particular words of the statute should be so narrowly construed and applied as to defeat this purpose. The facts of each case should well determine the procedure of relation between cause and effect, but never to extend beyond the time embraced within the definite proof of causal connection between the injury and the hernia as provided by the terms of the statute. In an indirect hernia caused by accident accompanied by violence, the blow is the initial cause, the inception of the hernia, and the external protrusion the fruition. The external protrusion is but evidence of the more developed hernia, but is not conclusive evidence of the cause or the time it began. The only conclusive thing the protrusion proves is that it is then existant by visible evidence, not that it then and then only occurred along with the protrusion itself. The protrusion does not prove the initial cause, or the time of progress from the injury to the visibility of the bulging.

Since the judgment of the Industrial Board in our opinion is

based on an erroneous conclusion of both law and fact, the court erred in denying the appeal and sustaining the award. The evidence, for the reasons set forth above, demanded a finding that the accidental injury resulted in a compensable hernia. The Industrial Board based its award and the superior court sustained it on the erroneous idea that the words of the statute "appear suddenly" and "immediately followed" were not to be construed liberally, but narrowly. This is said not in criticism, but merely as illustrative. Such a construction would, in many meritorious cases, defeat the beneficial provisions of the act. If it had been the legislative intent that such a narrow construction should be put on the words used in the statute, the legislature could have restricted the words, and could even yet do so. "Instantaneously" could have as easily been used as the words which were used, and a definite period of time within which the *bulging* must appear to be compensable could have been inserted, had such been the legislative intent. So far as we have been able to find, in no jurisdiction where the words above discussed, or words of similar import have been used in workmen's compensation statutes, have the courts given them such a narrow construction as was applied in the instant case. There may be such cases, but we have been unable to find them and counsel have cited none to us.

It is difficult to comprehend how any one can read this record and come to any other conclusion save that the injury was the direct and sole proximate cause of the hernia. If this be true, certainly it was the legislative intent that the act should protect the applicant in such a case. To construe it otherwise would destroy (in a great majority of cases) its effectiveness, and thereby leave this class of workers without remedy. Such a construction would be unreasonable, and serve to render the statute meaningless to that vast number of laborers who might find themselves situated similarly to the claimant in this case. We can not believe it was the intent of the legislature to exclude them. As between the employer and the employee, the provisions of the workmen's compensation act closes the door to all judicial forums except the Industrial Board for redress of such injury to the employee, hence the equity and public necessity of a liberal construction of the terms of the act.

In *Gazan* v. *Heery,* 183 *Ga.* 30 (187 S.. E. 371), the court ruled

"The cardinal rule in the construction of legislative enactments is to ascertain the true intention of the General Assembly in the passage of the law. As a general rule, the use of plain and unequivocal language in a legislative enactment obviates any necessity for judicial construction, and indeed forbids an interpretation of the words employed by the General Assembly. . . An exception to the general rule just stated is presented by the use of words the meaning of which in general acceptance is apparently obvious, and yet the purpose of the legislature would be defeated were the words employed construed literally. Courts may construe the language employed in the act in connection with the context, and ascertain the legislative intent as derived from the old law, the evil, and the remedy, and will not defeat the intention and purpose of the General Assembly by giving effect to words which would render the purpose of the General Assembly in the passage of the enactment futile, unenforceable, or ineffectual. . . Words may be given one meaning in one statute and an entirely different meaning in a different statute, determinable by the character of the proposed legislation . ." See *State Revenue Commission* v. *Alexander, 54 Ga. App.* 295, 296 (187 S. E. 707) : "That judicial interpretation is excluded where none is needed in giving effect to the latter rule exists where, in the light of the old law, the evil to be corrected, and the end to be attained by the remedy, the manifest legislative intent and purpose would be defeated by a too literal construction of words."

Here was a workman who had followed his trade as a brick mason for many years, who received an injury by being violently struck down while stooping over plying his trade within the scope of his employment. It is uncontradicted that the injuries received were so severe that he was rendered unconscious. As a part of the res gestæ the evidence, without contradiction, shows that he complained of severe pains in the region of the inguinal ring, and in his back, and in other portions of his body. He was taken to a first-aid station where he was given first-aid treatment, including a sedative, to relieve his pain. From there he was carried to the hospital, bandaged, and he then returned to work on Monday following the injury on Friday. The evidence shows that from the time of the injury until the following Friday he suffered pains in the region of the inguinal ring. On Friday, one week following

the injury, he felt like something was coming out of his stomach and removed the bandages and discovered the bulging in the region of the inguinal ring. There is not the slightest evidence in the record of any previous hernia condition.

Let the judgment be reversed and the case be remanded to the Industrial Board for such further disposition as the law in such cases provides. *Judgment reversed. MacIntyre, J., concurs.*

BROYLES, C. J., dissenting. The Code, § 114-412, provides that in all claims for compensation for hernia resulting from injury by accident arising out of and in the course of the employee's employment it must be *definitely proved to the satisfaction of the Department of Industrial Relations* that the hernia appeared *suddenly,* and *immediately* followed the accident. In this case the hearing director found as a matter of fact, from the evidence, that the hernia appeared a week after the accident occurred. This finding of fact was amply authorized by the evidence, was sustained by the Industrial Board, and can not be disapproved by the superior court or this court. I agree with my colleagues that the words "suddenly" and "immediately" should be construed liberally, and not narrowly, in favor of the claimant; but the construction should be reasonable and logical, and not a construction that would cause the words to become meaningless. I can not agree that the award of the hearing director should be construed as holding that the claimant must show that the hernia appeared "instantaneously" with the accident. In Webster's New International Dictionary, are the following definitions: "Instant: A portion of time too short to be estimated;" "Instantaneous: Done or occurring in an instant, or without any perceptible duration of time;" "Instantaneously: Immediately, instantly, at once."

What the director and the Industrial Board really held was that a hernia which did not appear until one week after the accident was not a hernia that appeared "suddenly" and "immediately" after the accident, within the meaning of the above-referred-to Code section, and I think that holding was correct. In *Royal Indemnity Co.* v. *Beckmann*, 66 *Ga. App.* 369 (supra), the headnote is as follows: "The evidence was insufficient to authorize a finding that the hernia alleged to have been sustained by the claimant for compensation arose suddenly, or that it arose immediately following an accident." And in the opinion of the majority of the

court in that case it was held: "The evidence was insufficient to establish when or how the alleged hernia arose, and was therefore insufficient to show that the hernia appeared suddenly, or that it immediately followed an accident, assuming that there had been an accident. For these reasons the award of the director finding for the claimant . . was unauthorized, and the judge [of the superior court] erred in not sustaining the appeal of the employer and the insurance carrier." The decisions from other jurisdictions cited in behalf of the plaintiff in error are not binding on this court. In my opinion the judge of the superior court did not err in affirming the award of the Industrial Board.

ON SECOND MOTION FOR REHEARING.

GARDNER, J. It may be, as contended by learned counsel for movant, that there is an apparent, if not a real, conflict between this opinion and the one in the Beckmann case, supra. What we have said in comparison of the two cases has been far from any intention of disparaging criticism of the Beckmann case. This question before us has given us considerable concern and consideration. But under the peculiar wording of that portion of the section of the statute now under consideration, we have deemed it practically impossible to frame a certified question that would elicit a clear meaning of the terms "appear suddenly" and "immediately following" and as should be applied in cases with facts similar to those in the instant case and to those in the Beckmann case. It is therefore to be hoped that the situation may be finally clarified by the authority constituted for that purpose.

*Rehearing denied. MacIntyre, J., concurs. Broyles, C. J., dissents.*