46038.   BATTEY v. SAVANNAH TRANSIT AUTHORITY et al.

ARGUED MARCH 2, 1971—DECIDED APRIL 23, 1971.

*Adams, Adams, Brennan & Gardner, Richard J. Harris, John W. Minor,* for appellant.

*Bouhan, Williams & Levy, James M. Thomas, Edwin D. Robb, Jr.,* for appellees.

QUILLIAN, Judge. 1. The plaintiff contends that it was a question for the jury whether the defendant bus company was negligent in failing to have the driver of the bus have periodic medical examinations. The plaintiff further contends that, if the driver had been examined, his condition would have been revealed.

However, the stipulated facts show that the doctor who examined the driver in July 1965 testified: that at that time the driver's blood pressure was moderately elevated; that his high blood pressure was of such a nature that it responded to drug therapy; that you would not normally expect a person with moderately high blood pressure to have a sudden fainting spell and would not warn the patient as to this possibility.

The doctor who examined the driver immediately after the collision testified that if he had examined the driver prior to the accident and found his blood pressure at the high level at which he observed it shortly after the collision, he would have recommended that he stop driving his bus until his blood pressure could be brought back down to acceptable limits through drug therapy.

Since the driver was not examined shortly before the collision

there was no evidence as to what such an examination would have shown and any opinion as to what it would have revealed would be pure speculation.

There was no evidence that the defendant bus company had any knowledge of the driver's high blood pressure. Even if this court were to hold that it was the defendant bus company's duty to provide the bus driver with a medical examination, there was no showing in the case sub judice that had such an examination been made the defendant bus company would have anticipated the attack. Lucas v. City of Juneau, 168 F Supp. 195. The direction of a verdict for the defendant bus company was not error.

2. The plaintiff also contends that the defendant Fields, the bus driver, was negligent in failing to inform the bus company of his condition. With this contention we cannot agree. The facts show that Fields had moderately elevated blood pressure and the doctor testified that the condition would not normally be expected to cause a sudden fainting spell and that he would not warn the patient as to that possibility.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Hall, P. J., Eberhardt, Pannell, Deen and Whitman, JJ., concur. Evans, J., dissents.*

EVANS, Judge, dissenting. This is a tort action in which the trial judge directed a verdict for the defendant. I would reverse that judgment and therefore dissent from the majority opinion.

Where a motion for directed verdict is made, the evidence must be construed *with all reasonable deductions and inferences most favorably towards the party opposing such motion.* See *Jones v. Mayor &c. of Athens,* 105 Ga. App. 86 (1) (123 SE2d 420). And no matter how strongly the evidence may *preponderate in favor of the movant,* he is not entitled to a directed verdict if, when construing all inferences and deductions most favorably towards the other party, a conflict remains. See *Royal Blue Transp. Co. v. First &c. Nat. Bank,* 44 Ga. App. 754 (1) (162 SE 879).

Here the plaintiff was a fare-paying passenger on a common carrier bus of the Savannah Transit Authority, which collided with another vehicle on a public street in the City of Savannah, resulting in injuries to plaintiff. Plaintiff sued the bus company and its driver, as defendants. Under such circumstances, the ordi-

nary rules of negligence and diligence are not applicable, but the mandate of the statute requires that defendants *protect* plaintiff from injuries by the *exercise of extraordinary diligence.* The exact language of the statute is as follows: "A carrier of passengers must exercise extraordinary diligence to protect the lives and persons of his passengers, but is not liable for injuries to them after having used such diligence." *Code* § 18-204.

No rule is better established in Georgia than that "negligence is a question for the jury," which includes lack of negligence, diligence, lack of diligence, extraordinary diligence, and slight care. See *Cobb v. Coleman,* 94 Ga. App. 86, 90 (93 SE2d 801); *Martin v. Henson,* 95 Ga. App. 715, 738 (99 SE2d 251); *Wright v. Georgia R. & Bkg. Co.,* 34 Ga. 330, 338; *Garrett v. Royal Bros. Co.,* 225 Ga. 533, 534 (170 SE2d 294).

Ordinarily, when any person is injured by the running of a bus for hire, a prima facie case is made out against the bus company and its driver as to lack of reasonable skill and care on the part of the servant operating said bus. See *Code* § 68-710. And the defendant is required to introduce evidence showing the exercise of due care in order to overcome said presumption of negligence. See *McVeigh v. Harrison,* 68 Ga. App. 316 (1) (22 SE2d 752).

But here the person injured by the bus was a fare-paying passenger, and in such case, proof of injury by the running of the bus creates a legal presumption that the carrier *failed to exercise extraordinary care*—and that presumption *can be overcome only by proof that the carrier did exercise extraordinary care and diligence.* See *Eason v. Crews,* 88 Ga. App. 602, 613 (77 SE2d 245).

In *Douthitt v. Louisville & N. R. Co.,* 136 Ga. 351 (1a) (71 SE 470) it was held that ". . . this presumption will not be rebutted by the company showing that it exercised only ordinary care and diligence; as railroad companies are bound to use extraordinary care and diligence for the safety of passengers," citing *East Tenn. V. & G. R. Co. v. Miller,* 95 Ga. 738 (22 SE 660).

Thus, at this point we find the plaintiff injured by the movement of the bus while he was a fare-paying passenger thereon, and with a *legal presumption in his favor* that the defendant bus company and driver failed to exercise extraordinary care; and with the *burden lodged against defendants* of introducing proof that

they exercised extraordinary care and diligence; proof that defendants exercised ordinary care and diligence will not suffice.

The only statements in the entire record as to the conduct of the driver and the movement of the bus immediately before and at the time of the collision are found in paragraph 6 of a "stipulation of facts" entered into by the parties, as follows: "6. The collision occurred when the driver, defendant Fields, suddenly became dizzy, blacked out, and lost control of the bus. There was no evidence that defendant Fields was driving improperly at any time prior to his blacking out." Surely a great deal more than this abbreviated statement could have been developed by examination and cross examination of the witnesses in order to help this court solve the questions at issue here. For instance, what periods of time elapsed between the time when the driver "suddenly became dizzy" and the time when "he blacked out" and the time "when he lost control of the bus?" How much time did the driver have to take safety precautions between the first warning of the approaching dizziness and the time when he was completely overcome by it? After the first notice of approaching dizziness, how long thereafter was it before the driver was partially impaired mentally; how long before he was partially impaired physically? How long before he was completely incapacitated, both mentally and physically?

Because the stipulation is not specific in these particulars, we are required to construe all deductions and inferences that may arise from the limited facts given most favorably toward the party opposing the grant of the motion for directed verdict. The law is very plain in that respect. See *Jones v. Mayor &c. of Athens,* 105 Ga. App. 86, supra, and *Royal Blue Transp. Co. v. First &c. Nat. Bank,* 44 Ga. App. 754, supra. To illustrate the ambiguity in paragraph 6 of the stipulation, how "suddenly" did the defendant driver become dizzy? The word "suddenly" is relative; a sudden shower of rain may give only 5 to 10 minutes' warning of its approach. A sudden blizzard may give only a few hours' warning of its approach; a sudden electric shock may give only a fragment of a second's notice. In a case involving the Workmen's Compensation Law, where the "sudden appearance" of a hernia was discussed, it was held that the word "suddenly" should not be con-

strued as the equivalent of the word "instantaneous," and it was held that a hernia which appeared *one week after the original seizure* was "sudden" within the meaning of the statute. See *Blackshear v. Liberty Mut. Ins. Co.,* 69 Ga. App. 790 (2) (26 SE2d 793).

Here the defendant bus company and its driver owed plaintiff a positive duty of protecting him by exercising extraordinary care and diligence. This court has held that there is no liability for *negligence,* or *gross negligence,* of the driver of an automobile who suddenly and unexpectedly is stricken by illness or a fainting spell or a heart attack. See *Freeman v. Martin,* 116 Ga. App. 237 (156 SE2d 511); *Norman v. Allen,* 118 Ga. App. 394 (163 SE2d 859); *Few v. Weekes,* 118 Ga. App. 190 (1) (162 SE2d 884). But in those cases there was no burden on the defendant—but, to the contrary—the burden was on the plaintiff. In those cases the plaintiff had the burden of showing the defendant committed negligence—here the defendants had the burden of showing that defendants exercised extraordinary care, that is, that they did not commit even slight negligence. In those cases there was no problem incident to how suddenly the seizure came on, and whether defendants had sufficient time to take corrective action to prevent a collision. In the case sub judice that problem confronts the defendants in its paragraph 6 of Stipulation of Facts, which stipulation fails to show whether defendants had sufficient time after the first notice of the on-coming seizure in which to set the brakes and stop the bus. Defendants had the burden of so proving in this case, and construing the stipulation and all inferences arising therefrom most strongly against defendants, they have failed to carry that burden. We may assume that the defendant driver felt himself becoming dizzy, and had plenty of time to set the brake on the bus, and to bring it to a complete stop before blacking out, and yet failed to do so. There is absolutely nothing in the stipulated facts to negate this inference, and, hence, defendants did not carry the burden imposed upon them by law. Verdict should not have been directed in favor of defendants in this case.