ESTERBAN ZELEDON, Plaintiff, *v.* BOWERY SAVINGS BANK, et al., Defendants.

Supreme Court, Trial Term, New York County, December 16, 1948.

*Nathan Cooper, Harry Zeitlan* and *L. Ray Glass* for plaintiff.

*Irving Segal* and *Alexander E. Rosenthal* for defendants.

WALTER, J.   On May 29, 1945, plaintiff, an iron worker of many years of experience, was engaged, as an employee of Buehler Iron Works, in removing a fire escape from the rear wall of a multiple dwelling at 124 West 102nd Street, then owned by defendant Tiedeman.   While so engaged he fell and sustained personal injuries, and to recover damages for such injuries he brings this action against the owner Tiedeman and against two former owners, Bowery Savings Bank and Doren Holding Co., Inc.

The fire escape was of the vertical ladder type, with respect to which the Multiple Dwelling Law had provided that after January 1, 1934, they should be unlawful above the second floor and should be removed (§ 231, subd. 4, as amd. by L. 1930, ch. 864).   Plaintiff's evidence also is that the fire escape was unpainted, rusty, and corroded.   Modern fire escapes had been placed on the building about 1936, but the old one had not been

removed, and in 1942 the department of housing and buildings of the city of New York had directed that this old vertical ladder type of fire escape be removed.

Tiedeman acquired the building from Doren Holding Co., Inc., November 2, 1944, a little over six months before plaintiff's accident, and Doren Holding Co., Inc., had acquired it from Bowery Savings Bank about August 6, 1944, at least nine months before the accident.

Tiedeman engaged Barrett Smith Iron Works to remove the fire escape, and Barrett Smith Iron Works sublet the job of removal to Buehler Iron Works.

On the day of plaintiff's accident Buehler Iron Works, through plaintiff and others, had removed a similar fire escape from the adjoining building, 122 West 102nd Street, and had started the work of removing the fire escape from 124 West 102nd Street. The fire escape at the top or fifth floor of 124 had been completely removed and the work of removing the one at the fourth floor was in progress when plaintiff fell.

The process followed was to remove first the railing around the fire escape platform, and then the platform, and the plan evidently was to then remove the iron brackets on which the platforms rested. Those brackets were angle irons about one and one-half inches wide, evidently built into the wall when the wall was built. The horizontal part on which the platforms rested extended out from the wall about two and one-half feet. There were three for each platform, one at each end and one in the center.

Plaintiff's version of his accident is that the railing around the fourth floor fire escape had been removed and the platform thereof had been loosened from its supporting brackets and was ready to be lowered when he stood with one foot on one of such brackets and, with his other foot in the air, grasped the window sill or frame with one hand and with his other hand signaled to the man in charge of the block and fall tackle by which the railings and platforms were being lowered to lower the railing, and the bracket on which he was standing broke at or quite close to the point where it entered the brick wall of the building and precipitated him to the ground, some forty or fifty feet below.

A witness for plaintiff, another employee of Buehler Iron Works, who was assisting in the operation, says that just before he fell plaintiff was standing, not on the bracket which had supported a platform of the fire escape, but on a ladder which

Buehler Iron Works owned and had brought to the scene as one of its appliances to be used in the work of removal. According to that witness that ladder, just before the plaintiff fell, was resting on the third floor fire escape platform and plaintiff stood on one of its rungs and reached up to the fourth floor platform and caught hold of the bracket in order to pull himself up, and the bracket then broke off about one-eighth of an inch from the wall, and plaintiff fell.

A jury reasonably could adopt either version of the accident, but whichever is adopted the end result is the same, viz., that plaintiff's injuries were sustained either through his own negligence or because this fire escape on defendant Tiedeman's building was so rusty, worn and corroded that it would not hold plaintiff's weight.

The fire escape, however, was not there for plaintiff's use as a fire escape and he was not invited to use it as such and there was no representation to him that it was fit for such use. On the contrary, plaintiff was there for the express purpose of removing the fire escape, and the reason he was engaged to remove it was that it was old and outmoded and if not actually defective was at least something which should not be where it was and the owner was under a legal duty to remove it.

In view of those facts, I am unable to see how even defendant owner is under any liability to plaintiff, even though it be assumed that the fire escape was defective and dangerous as a result of the owner's neglect and that its dangerous condition rendered it a nuisance under section 309 of the Multiple Dwelling Law or under section 564-15.0 of the Administrative Code of the City of New York (*Kowalsky* v. *Conreco Co.*, 264 N. Y. 125; *Storm* v. *New York Tel. Co.*, 270 N. Y. 103, 108; *Dinkuhn* v. *Western New York Water Co.*, 252 App. Div. 51, affd. 279 N. Y. 606; *De Lay* v. *Roman Catholic Church of St. Paul*, 274 App. Div. 1002).

A fortiori I am unable to see how the former owners are under any liability to plaintiff. Those prior owners did nothing to conceal the condition of the fire escape or the fact that its removal had been ordered, they had no reason to believe that their vendee would not see and realize its condition and the fact that its removal was required by law, and the time which elapsed between their respective conveyances and the time of the accident was more than enough to give the new owner reasonable opportunity to discover the condition and make the necessary repair or removal; and whatever their liability may

have been had they remained owners, it certainly had terminated before plaintiff's accident (*Pharm* v. *Lituchy,* 283 N. Y. 130; *Kilmer* v. *White,* 254 N. Y. 64, 71; *McCabe* v. *Cohen,* 294 N. Y. 522; *Rufo* v. *South Brooklyn Sav. Bank,* 268 App. Div. 1057).

Plaintiff's counsel relied heavily upon *Peck* v. *Weil* (231 App. Div. 670; 235 App. Div. 601, affd. 259 N. Y. 540), but I think the situation of a window washer who leaned against an iron bar across the window he was to wash is very different from that of one who was engaged to remove a structure and falls while in the very act of removing it. *Alpert* v. *Day* (264 N. Y. 643), likewise seems to me inapplicable because of the difference I think exists between the situation of one engaged to paint a fire escape and one engaged to remove a fire escape.

Plaintiff's complaint contains a second cause of action against Tiedeman alone stated to be based upon the Employers' Liability Act and a third cause of action against that defendant alone stated to be based upon a violation of section 240 of the Labor Law. Those causes of action were voluntarily withdrawn at the close of the plaintiff's case and it hence is unnecessary to consider them but it seems appropriate to remark that both seem to me palpably unfounded. (As to the applicability of section 240 of the Labor Law, see *Iacono* v. *Frank & Frank Contr. Co.,* 259 N. Y. 377, 382; *Sweeney* v. *Spring Products Corp.,* 257 App. Div. 104; *Mercante* v. *Hygrade Food Products Corp.,* 258 App. Div. 641.)

I conclude, therefore, that defendants are entitled to the direction of a verdict in their favor.

When their motions therefor were made at the close of the evidence, I had not completed the investigation and consideration which I desired to devote to the questions thereby presented before finally deciding them, and being unable to formulate for the jury any statement that defendants owed a certain duty to plaintiff and that they were to decide a certain stated question of fact as to whether defendants had complied with that duty, I resorted to the expedient of submitting to the jury the one question " Was plaintiff himself negligent in a respect which contributed to his injury " and instructing them to answer that question either " Yes " or " No ".

The jury unanimously answered " Yes ", and for that additional reason the motions to direct a verdict for defendants are granted.