**H. B. LEIGH, Plaintiff in Error,**

v.

**Claribel WADSWORTH, Defendant in Error.**

**No. 38819.**

Supreme Court of Oklahoma.

March 14, 1961.

Rehearing Denied May 16, 1961.

LeRoy Blackstock, Tulsa, and Felix Duvall, Ponca City, for plaintiff in error.

Fitzgerald & Houston, Stillwater, and Armstrong & Burns, Ponca City, for defendant in error.

BERRY, Justice.

Defendant in error, Claribel Wadsworth, hereafter referred to as plaintiff, instituted this action against plaintiff in error, H. B. Leigh, hereafter referred to as defendant, to recover damages resulting from personal injuries sustained when the roof of the back porch to a frame house fell upon her. At the time of the accident plaintiff and her family occupied the house as tenants of a person who had purchased same from defendant's grantee. The defendant, a building contractor, built the house for resale.

The case was tried to a jury. The jury's verdict and judgment thereon were in favor of plaintiff. From order of trial court denying defendant's motion for new trial, he perfected this appeal.

Defendant bases his contention of error on the trial court's part on the propositions that (1) plaintiff's failure to allege in her amended petition upon which the case was tried that the acts of negligence set forth therein were the "proximate cause" of plaintiff's injuries, rendered said petition vulnerable to defendant's demurrer thereto and that her failure to allege in the amended petition that defendant was guilty of "willful negligence" also rendered the petition subject to said demurrer; that (2) defendant owed no duty to plaintiff and she cannot charge him with negligence because of lack of privity of contract; that (in the alternative) (3) the evidence fails to show that the porch as constructed was "immediately and certainly dangerous"; that (4) defendant's requested instructions numbered "1", "2", "3" and "4" relating to the liability of a contractor to a third person should have been given in lieu of the instruction that was given on said subject.

Defendant's contentions will be considered in the order in which same are above stated.

In support of the contention first above mentioned, defendant cites Wyman v. Chicago, R. I. & P. Ry. Co., 76 Okl. 172, 184 P. 758, and Armstrong v. City of Tulsa et al., 102 Okl. 49, 226 P. 560. The cited cases do not, in our opinion, announce a rule of law to the effect that before a plaintiff can be said to have stated a cause of action in a case such as the instant case, he must allege as a conclusion in his petition that the acts of negligence set forth therein were the "proximate cause" of the complained-of injury. To the contrary, the cases represent authority to the effect that a plaintiff must allege facts in his petition which tend to show that the defendant was negligent and which facts tend to show that defendant's negligent acts were the proximate cause of the injury. See 65 C.J.S. Negligence § 188(2), p. 905.

Our construction of said cases is in keeping with the rule announced in the first paragraph of the syllabus to Pugh-Bishop Chevrolet Co. v. Duncan, 176 Okl. 310, 55 P.2d 1003, 1004, to this effect:

"In this jurisdiction technical accuracy in a pleading is not required. A petition, which in ordinary language alleges facts sufficient to show that plaintiff has been wronged, how he has been wronged, the damage he has sustained thereby, and that defendant perpetrated the wrong complained of and is liable therefor and asks judgment for the damage, is sufficient to state a cause of action, and a demurrer thereto is properly overruled."

The ultimate facts alleged in the amended petition sufficiently showed that the acts of negligence set forth therein were the proximate cause of the accident and plaintiff's resulting injuries.

We are of the further opinion that the matter of plaintiff stating a cause of action in her amended petition was not contingent upon pleading a conclusion to the effect that defendant was guilty of "willful negligence."

Defendant cites Armstrong v. City of Tulsa et al., supra, in support of his contention that he is not liable to plaintiff because there was no privity of contract between them. In the cited case it was stated in substance that as a general rule an independent contractor is not liable to

third persons for an injury caused by work done by the contractor where the work had been turned over to and accepted by the contractee prior to the injury.

In urging application of said rule, defendant points to the admitted fact that he built the house in the early part of 1949; that his purpose in building the house was to sell it and the land upon which it was built; that in April, 1949, defendant sold the house; that his grantee resold the house in February, 1951; that plaintiff rented the house from the last referred-to purchaser in March, 1951, which facts unquestionably show that there was no privity of contract between plaintiff and defendant at the time of her injury on August 7, 1951. However, for reasons hereinafter given, said facts, under present-day authority, do not serve to relieve defendant of liability.

In Crane Co. et al. v. Sears, 168 Okl. 603, 35 P.2d 916, 917, we held that lack of privity of contract between a person injured as the direct result of the defective condition of a manufactured article did not preclude said person recovering from the manufacturer damages attributable to said condition. In the second paragraph of the syllabus to said case this was said:

"Where a manufacturer with information before him of the nature of the use to which an article manufactured by him is to be put and from the nature of such use must know that if the article when put to such use, if defective, will be imminently dangerous to persons who he knows must come in contact therewith, a duty rests upon such manufacturer to use ordinary care to ascertain the condition of the article to see that it is safe. If he fails to exercise ordinary care in this regard, and as a result sells the article in a defective condition, he is liable for personal injuries to that class of persons who must necessarily come in contact with such article, and liability is not limited to those with whom the manufacturer contracts."

In the body of the opinion it was made clear that this Court chose to follow the rule an-

nounced in the leading case of MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A.1916F, 696, to the general effect that if the nature of a finished product placed upon the market by a manufacturer to be used without inspection by his customers is such that it is reasonably certain to place life and limb in peril if the product is negligently made, it is then a thing of danger. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under duty to make it carefully.

The Crane Co. case is cited and quoted from with approval in Gosnell v. Zink, Okl., 325 P.2d 965. In the Gosnell case we quoted with approval this portion of the statement made by the annotator of the annotated notes beginning at page 569 of 164 A.L.R.:

"Under the modern doctrine, there is little doubt that a person who has had no direct contractual relations with a manufacturer may nevertheless recover from such manufacturer for damages to property caused by the negligence of the manufacturer in the same manner that such a remote vendee or other third person can recover for personal injuries. The modern doctrine may be regarded as allowing recovery for injury or damage to property in all instances where a case in tort law of negligence can be made out against the manufacturer—that is, where the requisite elements of foreseeability and breach of duty are established, where the manufacturer can be found to have been negligent, and such negligence was the proximate cause of the property damage." At page 593 of 164 A.L.R.

We had occasion in Greenwood v. Lyles & Buckner, Inc., Okl., 329 P.2d 1063, 1065, to consider the proposition of whether a contractor is liable to a third person for damages resulting from negligence on the part of the contractor in creating a dangerous condition in performing his con-

tract. We there said that "In some of the earlier cases non-liability is said to follow from the fact that there is no privity of contract between the contractor and the injured third person, and, therefore, no duty owing. This theory has met with increasing disfavor. It is now generally conceded as an academic proposition that a duty in tort does exist in cases of this nature."

At page 891 of the annotated notes beginning at page 869 of 58 A.L.R.2d, this was said by the annotator:

"In a number of cases, all of them of fairly recent origin, the language and reasoning of the rule of nonliability with respect to negligent building or construction contractors has been expressly overthrown and the rule as stated in the McPherson Case adopted instead. In other words, these cases openly take the view that the duty owed by a building or construction contractor to third persons, after he has completed and turned over his work to the owner, is the same as that owed by the manufacturer or vendor of chattels to persons not in privity of contract with him, as that duty was expressed in the MacPherson case."

It is stated in Sec. 21, p. 662, 38 Am.Jur. that "it frequently has been declared to be a rule that no cause of action in tort can arise from the breach of a duty existing by virtue of contract, unless there is between the defendant and the person injured what is termed 'privity of contract'." In the concluding portion of the section it is stated that "no privity of contract is essential to support liability for negligence in respect of acts or instrumentalities which are imminently dangerous. The liability in such instances is independent of privity of contract and depends merely on the duty of every man to act so as not to injure the persons or property of others."

We are of the opinion that under the facts of this case the principles recognized and announced in the cited authorities are ap-plicable to defendant as the builder of the house occupied by plaintiff.

As an alternative proposition, the defendant contends that assuming that lack of privity of contract does not bar recovery, the evidence fails to show that he willfully created a condition which he knew to be immediately and certainly dangerous to third persons within the purview of the rule laid down in the first paragraph of the syllabus to Greenwood v. Lyles & Buckner et al., supra. The pertinent facts bearing upon the contention are these:

At the time of the injury, plaintiff was seated on the concrete floor of the back porch or stoop of the house. Her feet were resting on the step used in gaining access to the porch from the yard. The roof to the porch suddenly fell upon her causing severe and permanent injuries to her person. At the time of the accident she was reading a magazine.

The porch which sheltered the back door to the house was built by defendant in the early part of 1949. The floor of the porch was approximately $2\frac{1}{2}'$ square. The porch was covered by a wooden roof or canopy which was approximately 5' wide and 6' long. The roof was secured to the house by eleven 16-penny box nails which were driven through the back portion of the roof to the siding of the house immediately under the eaves of same. Three of four nails penetrated the studding to the house. The remainder only penetrated the $\frac{3}{4}"$ siding of the house. The roof was braced by 2 x 4's which extended from the underside portion of the outside corners of the roof to the siding of the house at a point approximately 5' above the floor of the porch. The roof where nailed to the house was sheltered by the eave of the house.

Two witnesses, who qualified as experts, testified that the porch was not built in accordance with accepted building practices in that the roof, under all of the facts, was not adequately supported. One of the witnesses who was an architect and engineer, testified that in order to construct the roof in accordance with accepted building prac-

tices, the structural members of the roof should have been extended through the siding of the house and secured to the studding of same; that the roof was so constructed that he "would have been afraid to go off and leave it in the first place." Defendant and another witness testified that considering the type of house that defendant built, the roof to the porch was built in accordance with accepted building practices. Defendant also introduced evidence showing that the house was inspected and approved for a G. I. loan.

The evidence shows that as a result of a hail storm in the spring of 1950, the roof of the porch was reshingled; that in reshingling, the mechanic who did the work probably stood on the roof. The defendant stresses this fact and argues that the weight of the mechanic probably caused the nails securing the roof to the house to pull out in part and that the nails thereafter slowly loosened causing the roof to fall, which deterioration he suggests was possibly hastened by wind action. The defendant testified that the weight of a mechanic roofing the porch would not cause the nails to pull out, which testimony tends to refute defendant's present theory.

Defendant also argues that the cause of the roof falling may have been that one or both of the supports thereto became disengaged or that the roof may have been pulled loose in part from the house by some object coming into violent contact with same. There is no evidence sustaining either of said theories. There was evidence that cobwebs had accumulated between the siding of the house and the roof but there was also evidence to the effect that this condition could have resulted from the unevenness of the siding or from the roof not being constructed flush with the siding.

On the day following the accident, one of the witnesses who qualified as an expert witness made a thorough examination of the porch of the house and took a number of photographs showing the roof to the porch, the side of the house where the roof was attached, etc. The photographs were introduced in evidence. Inquiry was not made of this witness nor of any other witness relative to the condition of the nails which secured the roof to the house. It is a matter of common knowledge that nails such as were used in securing the roof and the supports thereto will show rust when exposed to the elements. Therefore, if the roof had slowly pulled away from the house, the condition of the nails would in part evidence said fact. The nails shown in the photograph of the roof and the brace (only one end of a brace was photographed) tend to show that the nails were bright and free of rust the day following the accident. The photographs therefore fail to show that collapse of the roof resulted from the nails securing the roof to the house slowly pulling free.

The defendant apparently does not contend that deterioration resulting from action of the elements caused the roof to fall. He testified that the roof as constructed would stand for 10 years or longer. The only competent evidence in the record which tends to show the cause of the accident in controversy is that the roof was improperly constructed.

There is no dispute on the proposition that the defects in the roof were latent and that neither of defendant's successors in title nor the plaintiff had any knowledge of said defects.

We return to defendant's contention which is based on Greenwood v. Lyles & Buckner et al., supra. Defendant stresses the first paragraph of the syllabus of said case to the effect that "where the contractor has willfully created a condition which he knows to be immediately and certainly dangerous to persons other than the contractee, who will necessarily be exposed to such danger, considerations of public policy do not require the application of the general rule."

In the body of the opinion last referred to it is stated that "where the contractor knew that the defective condition of the structure was such as to make it immediately and certainly dangerous * * *." The contrac-

tor's negligence in such case has been characterized as "willful negligence". It follows that if the facts show that defendant knew or by the exercise of ordinary diligence should have known that the porch as built was "immediately and certainly dangerous" he was guilty of willful negligence. Is there competent evidence showing that the porch as constructed was "immediately and certainly dangerous"? The defendant contends that the answer is "no" and plaintiff contends that the answer is "yes".

The defendant states in his brief that "if the porch roof had fallen within a few days or even a month after completion of the house, it could not be effectively argued that defendant was without negligence" (that this fact would tend to show that the roof as constructed was "immediately and certainly dangerous"), but since the roof stood for approximately 2½ years before same fell, this fact conclusively shows that the roof as constructed was not immediately and certainly dangerous within the purview of the rule announced in the last-cited case.

It is pointed out in Blackshear v. Liberty Mut. Ins. Co. et al., 69 Ga.App. 790, 26 S.E. 2d 793, 805, that the word "immediately" "has two meanings, one indicating the relation of cause and effect, as direct and proximate, and the other the lapse of time between two events."

The word "immediately" as used in the opinion under discussion was used in accordance with the definition that is set out first in the above quotation. It was, therefore, not intended that said word as used in the opinion be given the meaning of "instantly" or "suddenly", and to the contrary, the meaning intended was that where the defect created by a contractor is the immediate and proximate cause of the injury—immediate and proximate because there is no intervening cause that may have brought about or directly contributed to the injury, the contractor may, in a proper case, be held liable. In the instant case, the only evidence which tends to show an "intervening cause" is the passage of time (some

2½ years) between construction of the roof and collapse of same.

Defendant earnestly contends that the passage of time "was sufficient to break the chain of causation" and represents an intervening cause which serves to relieve him of liability to plaintiff. In making this argument defendant overlooks the fact that he testified that the roof as constructed would stand for 10 years or longer, which evidence tends to establish that the mere passage of time did not cause nor contribute to collapse of the roof. It follows that in order to agree with defendant's contention it would be necessary to hold that after the passage of a given period of time (defendant suggests a month) a builder, in a case such as this, would not, as a matter of law, be liable to a third person. We are unable to agree with this contention.

In Hanna v. Fletcher, 97 U.S.App.D.C. 310, 231 F.2d 469, 474, 58 A.L.R.2d 847, the United States Court of Appeals, District of Columbia, stated that "If a porch stands for seven years and then collapses the fact that it had stood for seven years would not eliminate negligence as the cause of its collapse." It was contended in Hale v. Depaoli, 33 Cal.2d 228, 201 P.2d 1, 3, 13 A.L.R.2d 183, that the passage of 18 years from date of construction of the structure causing the accident relieved the contractor from liability to a third person. In rejecting said contention, the court stated that the "mere passage of time presents questions of fact and not of law." The contention was made in Sutton v. Otis Elevator Co., 68 Utah 85, 249 P. 437, 443, that "the fact that the elevator (which fell causing the complained-of injuries) was operated in regular service from September, 1920 to March, 1922, for as much as 18 hours per day before the accident occurred, * * * is conclusive evidence that the matter of attaching the cables to the cones was not imminently dangerous"; that the court "as a matter of law should determine that the manner of attaching the cables to the cones was not the proximate cause of the injury." In rejecting said contention this was said:

"* * * If the life of a cable in ordinary use was limited to a fixed, definite period of time, and it was shown in the instant cases that the cable lasted the full period before parting from the cones, the contention of counsel would be incontrovertible. But such is not the case here, and consequently we are bound to hold that the evidence referred to, in connection with the other evidence in the cases, presented a question for the jury to determine. * * *"

See also Kuhr Bros., Inc. v. Spahos, 89 Ga. App. 885, 81 S.E.2d 491, 495, where it is stated that "The nature of the article or instrumentality is the primary consideration in determining whether it is imminently dangerous"; that it could not be said as a matter of law that a defectively installed furnace which caused a house to burn some two months following installation and use was not imminently dangerous.

We are of the opinion that under the facts of this case, the matter of whether the roof to the porch was constructed in such a manner as to be imminently dangerous was a question of fact for the jury, and since there is competent evidence sustaining the proposition that such was the case, the trial court did not err in entering judgment on the verdict in favor of plaintiff. If the roof was so constructed as to fall of its own weight, and the jury no doubt so concluded, the roof was "certainly dangerous" from the moment it was erected.

Defendant's claim of error on the trial court's part in giving the complained-of instruction, which was not excepted to, and in refusing to give the instructions that defendant requested, is based upon the proposition that the rule of law which governs this case is the rule or alternative rule that defendant contends for. After having read the complained-of instruction and the opinion in Greenwood v. Lyles & Buckner et al., we are of the conviction that the rule of law laid down in said case is fairly and correctly summarized in the instruction. In view of the fact that we approve said rule, we are of the opinion that in giving the instruction no error was committed.

In order to stay the judgment herein, the defendant filed a supersedeas bond below. The plaintiff has moved for judgment on said bond and pursuant to said motion, judgment is hereby entered in favor of plaintiff and against defendant and the sureties on said bond.

Affirmed.

WILLIAMS, C. J., and DAVISON, JOHNSON, JACKSON and IRWIN, JJ., concur.

BLACKBIRD, V. C. J., and HALLEY, J., dissent.

HALLEY, Justice (dissenting).

I dissent to the majority opinion in this case for the reason that it lays down rules of law that are unsound and misapplies a rule of law to the evidence.

The majority says here that a builder-vendor is liable to a third person for an injury which resulted from the collapse of a porch on a house built and sold by the defendant to Dwight W. Shelby who sold to J. R. Vandergrift who rented to plaintiff and her husband.

In this case the defendant was not a big operator but he did build a number of houses in Stillwater that were not expensive and were built to get G-I loans. The house in question was inspected and approved for such a loan.

In a recent work Products Liability by Frumer and Friedman, this statement is made:

"It was the common law rule, and still is the general rule, that the vendor of real property is not subject to liability for bodily harm caused to the vendee or others while upon the premises by any dangerous condition, whether natural or artificial, which existed at the time the vendee took possession. This rule has been applied despite the violation of a statute or ordinance.

"Most courts having occasion to pass upon the question have recognized that a vendor of real property is liable for

negligent failure to disclose a dangerous condition known to him, if he should have realized that the vendee did not know of and probably would not have discovered the condition or its potentiality for harm. Another exception applied in some cases is based on a finding that the vendor created a nuisance.

"It can, of course, be argued that there is no logical distinction between the position of a vendor of real property and that of a manufacturer and seller of goods. This would seem to be particularly true as to third persons. However, '(w)hatever measure of logic there may be in support of the argument so made,' the cases generally have refused to apply MacPherson to real property.

"One practical reason has been suggested for making a distinction between real and personal property. Although the courts have been zealous to guard against mention of insurance (except in those states permitting direct action), it is undoubtedly true that insurance has been an important factor in many of the cases extending tort liability. It is extremely unlikely that after selling his property the vendor of real property will continue insurance coverage against liability for injuries thereafter occurring on the property."

Most courts make the vendor liable for dangerous conditions known to him but unknown to the vendee and probably would not have been discovered by him.

These questions are treated in Restatement of Law of Torts, Ch. 13, Topic 2, Sections 351, 352 and 353, which I set out:

" § 351. Dangerous Conditions Arising After Vendor Transfers Possession.

"A vendor of land is not subject to liability for bodily harm caused to his vendee or others while upon the land by any dangerous condition, whether natural or artificial, which comes into existence after the vendee has taken possession.

"§ 352. Dangerous Conditions Existing at Time Vendor Transfers Possession.

"Except as stated in § 353, a vendor of land is not subject to liability for bodily harm caused to his vendee or others while upon the land after the vendee has taken possession by any dangerous condition, whether natural or artificial, which existed at the time that the vendee took possession.

"§ 353. Concealed Dangerous Conditions Known to Vendor.

"A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his subvendee, after the vendee has taken possession, if

"(a) the vendee does not know of the condition or the risk involved therein, and

"(b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk."

Certainly as a vendor the defendant would only be liable if he knew of the condition and the risk involved and had reason to believe that the vendee would not discover the condition or realize the risk.

Under the facts in this case the defendant did not believe there was anything wrong with the construction and thought it was sufficient for all purposes and believed that there was nothing in the construction that necessitated that the vendee be informed of the manner and method of the construction of the porch.

As some authority has said there is no difference of substance between a vendor of real property who is also the builder and a construction contractor whose work is completed and accepted.

In 65 C.J.S. Negligence § 95b, this statement is made:

"As a general rule after the work has been completed and turned over to, and accepted by, the owner, the contractor is not liable to third persons for injuries suffered by reason of the condition of the work."

The case which caused a breaking from the old common-law covering matters of this kind was MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696. That involved a manufactured chattel, an automobile wheel. The rule in the MacPherson case has not caught on as to real property. Sarnicandro v. Lake Developers, Inc., 1959, 55 N.J.Super. 475, 151 A.2d 48; Kordig v. Northern Construction Co., 1958, 18 Ill.App.2d 48, 151 N.E.2d 470; Combow v. Kansas City Ground Investment Co., 1949, 358 Mo. 934, 218 S.W.2d 539, 8 A.L.R.2d 213; Copfer v. Golden, 1955, 135 Cal.App.2d 623, 288 P.2d 90; Zeledon v. Bowery Sav. Bank, 195 Misc. 933, 85 N.Y. S.2d 414; Palmore v. Morris, Tasker & Co., 1897, 182 Pa. 82, 37 A. 995; McIntosh v. Goodwin, 1954, 40 Tenn.App. 505, 292 S.W. 2d 242.

The majority opinion lays down the rule as an exception to that which says a vendor or builder-vendor is not liable for injury that may come to a third party on the premises which the builder-vendor has conveyed. The exception is that the builder-vendor is liable to persons other than his vendee where the builder-vendor has wilfully created a condition which he knows to be immediately and certainly dangerous. The record is completely devoid of evidence to prove that the defendant wilfully created a condition that was immediately and certainly dangerous. The plaintiff did not prove her case. The demurrer to the evidence should have been sustained.

It must be remembered that there was no evidence that the defendant was attempting to cover up any defects in construction. He was building according to methods that he deemed sufficient under the circumstances.

Neither was there any evidence that the house after it was built was imminently or inherently dangerous. Imminently and inherently are quite similar to the words immediately and certainly dangerous but whatever expressions are used it is clear that the defendant thought the manner of constructing the porch was sufficient. There was no evidence by any one that the porch was likely to fall down when it was completed. It withstood storms and the elements of Oklahoma and a re-roofing for two and one-half years after it was built.

It must not be overlooked that in the case at bar the defendant the builder-vendor never warranted the soundness of the construction by oral or written covenant and this Court has never implied a warranty in the construction of residences.

The rule of caveat emptor has always applied to purchasers of residences in Oklahoma.

We have held that the landlord is not liable for personal injuries resulting from defects in rented premises in the absence of warranty, deceit or fraud and that the rule of caveat emptor applies to leases of real estate. We have no deceit, no fraud and no warranty in the case at bar. I think where the evidence fails to show these elements as to a builder-vendor he should not be liable.

More liability should attach to landlord than to a builder-vendor because landlord and tenant is a continuing relation while that of builder-vendor terminates upon transfer of possession.

No doubt because of the novelty of the matter A.L.R. has in recent years discussed three cases, two of which depart from the beaten path on the questions here involved. The first is Combow v. Kansas City Ground Investment Co., heretofore mentioned and found at 358 Mo. 934, 218 S.W.2d 539, 8 A.L.R.2d 213. This case held that the vendor was not liable for injury to the vendee by a fall of plaster where there was not a warranty

that premises were free from defects and did not fraudulently conceal defects and permitted free inspection. There is an extensive annotation to this case beginning at page 218. I quote from that note as follows:

"The apparent unanimity of opinion as to the nonliability of vendors or grantors for personal injuries due to a defective condition of the premises has withstood the attempted application of at least two theories which it has been contended should operate to hold the vendor or grantor liable.

"The first of these theories is that of implied warranty. Under this theory liability is sought as in the case of chattels. But, as has been pointed out in Otto v. Bolton & Norris (Eng) (1936) 2 KB 46, (1936) 1 All Eng 960, stated infra, § 4, there is no implied warranty of safety in sales of real estate even though the vendor is also the builder of a house wherein a defective condition exists."

I also quote from that note as applied to the chattels of implied warranty:

"As applied to chattels the theory of implied warranty has been widely accepted, but in the words of an eminent authority on the law of contracts there are no implied warranties on sales of real estate. This statement of the rule has been applied to a situation in which a vendee or member of his family has sought to recover against a vendor for personal injuries sustained as a result of the defective condition of the premises conveyed."

"Thus, in Otto v. Bolton & Norris (Eng) [1936] 2 KB 46, (1936) 1 All Eng 960, where a person apparently a member of the vendee's family was injured by the fall of plaster from a defective ceiling, it was held that the builder-vendor did not impliedly warrant its safe condition, the court saying: 'It is settled law that the vendor of a house, even if also the builder of

it, gives no implied warranty as to its safety. A purchaser can make any examination he likes, either by himself or by somebody better qualified so to do. He can take it or leave it, but if he takes it, he takes it as he finds it. It is, perhaps, the strongest example of the application of the maxim "caveat emptor." I can find in no case any suggestion that a builder selling a house after completion is, in his capacity of builder, under any obligation to take care towards a future purchaser, let alone other persons who may come to live in it.' "

There is another case to which attention is called in that note and other authorities and that is Smith v. Tucker, 1925, 151 Tenn. 347, 270 S.W. 66, 70, 41 A.L.R. 830. The Supreme Court of Tennessee refused to hold the vendor liable to vendee or members of his family for injuries caused by defects in the premises. I quote from that case:

"Whatever may be the reason, no case can be found in the books where the vendor has been held liable in damages to the vendee, or to third persons, for personal injuries arising from defects in the premises.

"Whether this be on grounds of public policy, or because the rule of caveat emptor governs, and no warranty will be implied (2 Williston, Contr. § 926), or whether it be because the precedent negotiations are supplanted by the deed when the vendee receives it (27 R.C.L. 529), or whether the reason is to be found in the fact that the delivery of the deed practically terminates the relation of vendor and purchaser, whereas the relation of landlord and tenant is a continuing one, or whether such damages are not supposed to be within the reasonable contemplation of the parties —whatever be the reason, the fact remains."

The note to that case states the majority rule relieves the landlord of liability

for personal injury due to defective condition of leased premises in the absence of fraud on his part where he has surrendered possession of premises to the lessee.

The second case in A.L.R.2d to which I call attention is Hale v. Depaoli, 33 Cal.2d 228, 201 P.2d 1, 13 A.L.R.2d 183. In the summary of that decision it was said:

"The plaintiff was injured as a result of the collapse of a porch railing on a house constructed by defendant and his partner. The partner had charge of and supervised the construction. There was evidence from which a jury might infer that the railing was not erected in accordance with sound building practice. The defect was concealed, and the defendant had no actual knowledge thereof. The partnership sold the house to a third person who, some years later, sold it to the defendant individually and not as a partnership transaction. The defendant leased the property to the plaintiff's mother. The first count of the complaint was based on liability of a contractor for injury from negligence in construction; the second count was based on liability of a lessor for injury from a latent defect in the premises known to him.

"Upon appeal, the Supreme Court of California, in an opinion by Edmonds, J., reversing the judgment entered on a nonsuit, sustained negligence of a building contractor as a ground of liability for damages for an injury to a third person occurring after completion and sale of the building, where the defect was such that it would be reasonably certain to place life and limb in peril. ·

"However, plaintiff's contention as to liability of the defendant as a lessor for allowing plaintiff to occupy the leased premises in ignorance of a known latent defect was rejected on the ground that knowledge of the defect, imputed to the defendant as a contractor, was unavailable to charge him as a lessor.

"Carter, J., concurred in that part of the majority opinion reversing a nonsuit as to defendant's liability as a contractor, but dissented as to sustaining the nonsuit on the theory of liability as a lessor."

There is an extensive annotation to this case at page 191.

To me the Supreme Court of California committed grievous error in this case as is shown by the discussion of the rule of non-liability at page 201, which is:

"Most courts, in passing upon the question of building or construction contractor's liability for negligence resulting in injury or damage to third persons after the completion of the work and acceptance thereof by the owner, start with the assumption of what they consider to be the general rule that the contractor is not liable for such injuries to third person, on the theory that no privity of contract exists between the contractor and such third person, and that no duty is owed by the contractor in performing the contract to one other than the contractee. This rule is enunciated not only in the cases in which the plaintiff is denied recovery, but also in the cases in which the plaintiff is allowed recovery under the exceptions to the rule.

"The rule that a construction or building contractor is not liable for injuries or damage to a third person with whom he is not in contractual relation, resulting from the negligent performance of his duties under his contract with the contractee when the injury or damage is sustained after the acceptance of the completed work by the owner or contractee, may be said to be supported by the following cases, in most of which recovery was denied, and in some of which recovery was allowed under an application of an exception to the rule."

Thirty-two states sustain this rule and among them are Armstrong v. City of

Tulsa, 102 Okl. 49, 226 P. 560 and Howard v. Reinhart & Donovan Co., 196 Okl. 506, 166 P.2d 101.

Among the many cases cited in this annotation is that of Schott v. Ingargolia, La.App.1938, 180 So. 462, in which case it was held:

"It was held in Schott v. Ingargolia (1938 La.App.) 180 So. 462, that a building contractor is not liable to a third person who is injured by the fall of a building which the contractor constructed three years prior to the accident, even where the collapse of the house was directly occasioned by his unskilful and defective workmanship in its construction or repairs, since at the time of the occurrence of the accident he owed to such third person, a visitor of the owner of the building, no duty of care, and since the owner of the building, who had the custody and control of it at that time, assumed full responsibility for its condition. * * *"

It is quite apparent from this note that there have been a few cases that would place liability on a builder-vendor but they are principally cases that allege fraud, deceit or a covering up of the alleged defect.

I still maintain that the evidence in this case shows no such conduct on the defendant's part.

The third case in A.L.R.2d is Hanna et al. v. Fletcher, 97 U.S.App.D.C. 310, 231 F.2d 469, 58 A.L.R.2d 847. There damages were sought by tenant for bodily injuries sustained when a stairway railing collapsed. Plaintiff's opening statement contained detailed specifications of omissions and negligent acts in the course of repair work. The trial court granted judgment for defendants on opening statement of counsel. The appellate court reversed the case as to defendants and held that the contractor could be held liable for negligence proximately resulting in injuries to tenant notwithstanding absence of privity of contract between them. Three Justices dissented in this case and three concurred with the writer of the opinion.

This case, too, is followed by an extensive annotation on the negligence of building or construction contractor as ground of liability on his part for injury or damage to third person occurring after completion and acceptance of the work.

The rule of nonliability as to building contractor still carries the weight of authority as is shown at page 873 of 58 A.L.R.2d.

Although there are three or four cases that a builder-vendor would be held liable as to imminently or inherently dangerous construction or knowledge of danger or fraud and concealment of defects or wilful negligence by the contractor, yet the majority of cases still say the builder-vendor is not liable. Caporaletti v. A-F Corp., D.C., 137 F.Supp. 14, is a recent case which takes the plaintiff's view but the facts in that case are considerably different than in the case at bar.

Even though I were willing to go along with these exceptions, I say that the burden is still upon the plaintiff to bring her case under these exceptions and this she has failed to do. There simply was not sufficient evidence to go to the jury on these questions. Too many things could have caused the weakening of the support of this porch from construction to collapse for me to put such a burden on the defendant as was done by the trial court.

I dissent.